Mary R. DILLARD, Individually, and as Community Survivor of the Estate of Kenneth Lewis Dillard, Deceased, and Mary R. Dillard a/n/f For Kimberly Dillard, a Minor, Petitioners,

v.

TEXAS ELECTRIC COOPERATIVE and Stephen Paul Bumstead, Respondents.

No. 03–0655.

Supreme Court of Texas.

Argued April 7, 2004.

Decided Feb. 11, 2005.

R. Matt Dawson, Dawson & Sodd, P.C., Corsicana, Roland G. Brown, Law Offices of Roland G. Brown, Jacksonville, Glenn Sodd, Richard Neal Green, Dawson & Sodd, P.C., Corsicana, Anatole Robert Barnstone, Law Office of Anatole Barnstone, Austin, for petitioners.

Michael V. Winchester, Winchester & Associates, P.C., Plano, Stephen Paul Bumstead.D. Bradley Dickinson, Dickinson

& Associates, P.C., Dallas, for respondents.

Justice O'NEILL delivered the opinion of the Court.

In this personal injury and wrongful death case, we must decide whether the trial court abused its discretion in refusing to submit one of two different instructions on the defendants' inferential rebuttal defenses. An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts. For example, the defendants in this case contended at trial that the fatal auto accident in issue was not caused by their negligence, but rather by the presence of cattle on the roadway or by the conduct of the cattle's owner who allowed them to be there. The jury rejected these defenses and returned a verdict for the plaintiffs, upon which the trial court rendered judgment. The court of appeals, however, reversed and remanded the case for a new trial, concluding that the jury needed more than one inferential rebuttal instruction for a full consideration of the case. —— S.W.3d ——, 2003 WL 1884296. Because we conclude that the trial court's instruction sufficiently informed the jury about the defendants' inferential rebuttal defenses, we reverse the court of appeals' judgment and remand the case for that court to consider other issues that the defendants raised but the court did not address.

**I**

Texas Electric Cooperative (TEC) of Jasper, Texas, manufactures and sells utility poles. On the evening of May 27, 1996, TEC dispatched Stephen Bumstead to deliver a load of poles to Muenster, Texas, 304 miles away. About 120 miles out, traveling west on U.S. Highway 175 at about ten o'clock at night, Bumstead crested a hill and saw several dark cows on the road. Unable to stop his loaded tractor-trailer rig quickly enough without jeopardizing control, Bumstead collided with one or more of the cows, leaving one dead in the eastbound lane about 250 feet from a bridge crossing the Neches River. Maintaining control, Bumstead proceeded over the bridge and parked his truck on the shoulder about 1,500 feet beyond the dead cow. Bumstead immediately radioed an approaching trucker to warn him of the hazard ahead. Learning that the trucker had a cell phone, Bumstead requested that he call 911 to report the accident. Bumstead turned off his headlights and waited in his truck for help to arrive.

A few minutes later, Mae Joyce Brown drove past Bumstead's rig on to the bridge heading east on Highway 175. At the same time, the Dillards were approaching the bridge from the east in the unobstructed westbound lane. Crossing the bridge, Brown saw the approaching headlights of the Dillards' vehicle but did not see the dead cow in her lane of traffic. When she hit the cow, her car was thrown into the westbound lane and into the Dillards' vehicle, killing Kenneth Dillard and injuring his wife and daughter. Brown, too, was injured in the accident.

The Dillards sued TEC and Bumstead for negligence, seeking damages for their personal injuries and for Kenneth's death. Brown intervened in the suit. The Dillards and Brown subsequently joined a number of surrounding landowners as defendants, but these claims were dismissed or abandoned before trial because the cattle involved in the accident could not be traced to any of these defendants. Also before trial, Brown settled her claims against TEC and Bumstead, leaving only the Dillards' claims for the jury.

At trial, the Dillards contended that TEC and Bumstead were negligent in operating an overloaded and top-heavy truck

that could not be safely stopped when it encountered obstacles in the road, and in failing to warn approaching motorists, like Brown, of the hazard that the first accident created. TEC responded that its driver had insufficient time to take evasive action and thus could not have avoided hitting the cows despite the exercise of ordinary care. TEC also claimed that its driver was not responsible for the second accident that killed Kenneth Dillard and injured his wife and daughter because that accident was solely caused by the conduct of whatever unknown person allowed the cows to be on the roadway in the first instance.

At the charge conference, TEC requested that its defensive theories be presented to the jury in two inferential rebuttal instructions, one on unavoidable accident and the other on sole proximate cause. On sole proximate cause, TEC asked that the definition of proximate cause include the following sentence:

> There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the 'sole proximate cause' of an occurrence, then no act or omission of any other persons could have been a proximate cause.

*See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.2 (2003) (Sole Proximate Cause). The trial court refused to include this instruction, but agreed to instruct the jury on unavoidable accident, which it did in the following definition of proximate cause:

> PROXIMATE CAUSE means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission com-

plained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

> An occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

*See id.* PJC 2.4 (Proximate Cause) & PJC 3.4 (Unavoidable Accident). The charge also included an instruction on spoliation based upon TEC's failure to produce Bumstead's trip logbook and any evidence of time and speed that it might contain. Guided by the court's charge, the jury returned a verdict upon which the trial court rendered judgment in the Dillards' favor.

In the court of appeals, TEC complained of four errors: (1) the trial court's refusal to submit a sole cause instruction, (2) the trial court's submission of a spoliation instruction, (3) the trial court's refusal to admit certain opinion testimony concerning causation, and (4) the factual insufficiency of the evidence to support the jury's finding of negligence and causation. Examining only the first issue, the court of appeals concluded that the trial court erred in refusing TEC's sole-cause instruction because a jury could have reasonably inferred from the cows' presence on the roadway that whoever owned them was the sole cause of both accidents. —— S.W.3d at —— & n. 2, 2003 WL 1884296, at *3–4 & n. 2. The court of appeals reversed the trial court's judgment and remanded the case for a new trial. *Id.* at ——, 2003 WL 1884296, at *4. We granted the Dillards' petition for review to consider the propriety of the trial court's charge in light of the instructions that were given.

## II

When defendants blame an occurrence on someone or something other than themselves, the Texas Pattern Jury Charges provide multiple alternatives. There is a sole-proximate-cause instruction if the occurrence is caused by a "person not a party to the suit."[1] There is an unavoidable-accident instruction if the occurrence is not caused by "the negligence of any party to it."[2] There is a new-and-independent-cause instruction if the occurrence is caused by someone else later.[3] There is a sudden-emergency instruction if the occurrence is caused by something other than the defendant's negligence and arises suddenly.[4] And finally, there is an act-of-God instruction if the occurrence is caused by "the violence of nature."[5] The purpose of these instructions is to advise the jurors, in the appropriate case, that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it. *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995).

TEC urges that it was entitled to two separate inferential rebuttal instructions here because there is evidence that the accidents may have been caused by a condition beyond its control-the cattle on the roadway—or by someone not a party to the litigation—either the unknown cattle owner or Brown. The Dillards contend, however, that there is no evidence that an unknown cattle owner did or failed to do anything to cause these accidents. They further maintain that TEC abandoned its claim that Brown caused the second accident by arguing at trial that no one involved in the accident was to blame—they were just "all in the wrong place at the wrong time." But rather than focus on whether or not there was evidence to support each of TEC's proposed inferential rebuttal defenses, we think it more appropriate to examine the adequacy of the charge that was given.

The trial court's charge included the following instruction: "An occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it." That instruction is a verbatim recitation from the Texas Pattern Jury Charges. Comm. on Pattern Jury

1. Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.2 (2003) ("There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the 'sole proximate cause' of an occurrence, then no act or omission of any other person could have been a proximate cause.").

2. *Id.* PJC 3.4 ("An occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it.").

3. *Id.* PJC 3.1 (" 'New and independent cause' means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and

thereby becomes the immediate cause of the occurrence.").

4. *Id.* PJC 3.3 ("If a person is confronted by an 'emergency' arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.").

5. *Id.* PJC 3.5 ("An occurrence is caused by an act of God if it is caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented by reasonable foresight or care.").

Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.4 (2003); *see also Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 385 (1952) (approving this language). Although we have previously said that this instruction ordinarily applies to causes such as "fog, snow, sleet, wet or slick pavement, or obstruction of view," or to resolve a case involving "a very young child [who is] legally incapable of negligence," *Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex.1992) (citing *Yarborough v. Berner*, 467 S.W.2d 188, 191 (Tex. 1971)), the instruction's language is not so limiting. The instruction merely informs the jury that it may consider causes of the occurrence other than the negligence of the parties. *See Galveston, H. & S.A. Ry. v. Washington*, 94 Tex. 510, 63 S.W. 534, 538 (1901) ("We must look at the court's charge as practical experience teaches that a jury, untrained in the law, would view it[.]").

Under the unavoidable-accident instruction that the trial court submitted, TEC was free to argue to the jury that no one's conduct—including Brown's—caused the accident, a far easier burden than showing that others were negligent. And that's what TEC chose to do. Although TEC pled in the alternative that Brown's negligence was the sole proximate cause of the second accident, TEC did not contend during trial that Brown was to blame for the accident. This perhaps explains why the court of appeals' opinion does not mention her conduct. The defense that TEC presented at trial focused solely on the cattle obstructing the road, implicating only the conduct of their unknown owner. Accordingly, the court of appeals relied solely on this conduct as the basis for its holding that a separate sole-proximate-cause instruction should have been submitted. Whatever the conduct of an unknown cat-

tle owner might have been, it did not justify two separate inferential rebuttal instructions on what essentially was one defense. Because the instruction the trial court gave was sufficiently broad to include all shades of TEC's inferential rebuttal theories concerning the cattle, the trial court did not err in rejecting TEC's additional request on this same issue.

Although, as we have said, the traditional instructions do not always further the jury's understanding of the defense or conform to current broad-form practices, we believe that they do serve a legitimate purpose. *But see Reinhart*, 906 S.W.2d at 477 (Enoch, J., concurring) (opining that the unavoidable-accident instruction should be discarded); (Hightower, J., dissenting) (same). The standard broad-form question is structured such that the jury is not asked whether any particular person was negligent, but whether "the negligence, if any," of particular persons proximately caused an occurrence. There is at least a potential implication in this phraseology that the occurrence *was* caused by *someone's* negligence. *See Hill*, 849 S.W.2d at 805 (Hecht, J., dissenting) (noting the unavoidable-accident instruction simply tells the jury "what the law recognizes—that some accidents occur without anyone's negligence"). We see no harm in explaining to the jury through an inferential rebuttal instruction that no such implication is intended. But giving multiple instructions on every possible rebuttal inference has the potential to skew the jury's analysis in the other direction.

As we have noted, the Texas Pattern Jury Charges presently parse inferential rebuttal defenses into five separate instructions. Comm. On Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.1–3.5 (2003). Many of these instructions overlap

to create redundancies that encourage parties to request several so that the point can be repeatedly emphasized. *See Schuhmacher Co. v. Holcomb*, 142 Tex. 332, 177 S.W.2d 951, 953 (1944) (holding defendant was entitled to both unavoidable-accident and sole-proximate-cause instructions, despite objection that this allowed defendant to "slice two defenses from precisely the same facts"). For example, an occurrence caused by severe weather could justify either an unavoidable-accident or an act-of-God instruction. *See Reinhart*, 906 S.W.2d at 474 (noting that the sudden-emergency instruction "reiterates much of the unavoidable accident instruction"). Similarly, the instructions on new and independent cause and sole proximate cause can cover much of the same territory. Such redundancy is contrary to the spirit of broad-form submission. *See Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

More important, these instructions often draw distinctions among outside causes that are irrelevant to what jurors must decide. Under broad-form submission rules, jurors need not agree on every detail of what occurred so long as they agree on the legally relevant result. Thus, jurors may agree that a defendant failed to follow approved safety practices without deciding each reason that the defendant may have failed to do so. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 924 (Tex. 1981). Similarly, the jurors here could have unanimously found Bumstead negligent, even if half believed the negligent act was overloading his truck and half believed it was failing to warn oncoming traffic— acts that preceded two different collisions.

With respect to inferential rebuttal issues, jurors need not agree on what person or thing caused an occurrence, so long as they agree it was not the defendant. If some jurors here blamed the cattle (unavoidable accident or sudden emergency) and the rest blamed the unknown cow owner (sole proximate cause), their differences would be irrelevant—they would properly return a unanimous defense verdict. Just as jurors may find against a defendant without agreeing on which precise acts were negligent, they should be able to find the opposite without agreeing on the precise reason. The trial court's instruction presented that alternative to the jury, and TEC was entitled to nothing more.

## III

Because the trial court's charge adequately informed the jury about TEC's inferential rebuttal defenses, the court of appeals erred in holding that the case should be retried under a more elaborate and granulated charge. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for consideration of the other issues that TEC raised.