**AFFIRMED; Opinion Filed December 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01239-CV

### MATTHEW GOGGANS, Appellant
### V.
### TONIA MARIE FORD, Appellee

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-02281-B**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Myers

Matthew Goggans appeals the trial court's judgment in this suit for personal injuries resulting from an automobile accident. Following the jury's verdict, the trial court awarded Tonia Marie Ford judgment of $323,391.94 against Goggans. In his issue on appeal, Goggans contends the trial court erred by denying his motion for judgment notwithstanding the verdict and his motion for new trial. We affirm the trial court's judgment.

### BACKGROUND

On March 12, 2010, Ford and her husband were traveling in the right-hand lane of the freeway. Goggans testified he was in the second lane from the right traveling at about fifty miles per hour when a car to his left began to move into his lane. Goggans stated he applied his brakes hard, slowing down to twenty or twenty-five miles per hour, and he swerved to the right, striking the left rear portion of the Fords' car. Goggans testified he swerved to the right because there

was a truck behind him that was not reacting to his braking and because he thought he had room to get behind the Fords' car. When Goggans spoke to Ford's husband after the accident, Goggans said he thought he had room to get behind their car, but Goggans did not say that someone else had caused the accident, that someone was moving into his lane, or that he was afraid he was going to be hit. Despite remaining partially in the same lane, Goggans was not struck by the car moving over from the left or by the truck behind him.

Ford, who was in the front passenger seat, testified she was jolted into the door by the force of the impact. Both cars remained drivable, and no one received any medical attention at the scene. Within a few hours, Ford developed pain in her lower back. Before the accident, Ford had never had pain in her back or neck. The next day, she went to the emergency room for pain in her back extending into her right leg and pain in her neck. At the emergency room, she received injections to help with the pain and a prescription for pain pills. Over the following weeks, Ford's pain increased. She received treatment from a chiropractor. When the chiropractic and other conservative treatments failed to resolve Ford's issues, the chiropractor recommended she see a neurosurgeon. The neurosurgeon testified that Ford requires surgery to resolve her pain issues.

Ford sued Goggans for negligence. The jury determined that Goggans proximately caused the accident and that Ford's damages were $292,500. The trial court entered judgment in accordance with the jury's verdict.

## SUFFICIENCY OF THE EVIDENCE

Goggans contends the evidence is legally and factually insufficient to support the jury's verdict.

## Standard of Review

When reviewing the legal sufficiency of the evidence, we consider all the evidence before the jury, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the evidence furnishes a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence, more than a scintilla, to support the fact. *Id.*

When reviewing the factual sufficiency of the evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied).

In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). The jury is free to believe some, all, or none of a witness's testimony. *Daigle v. Daigle*, No. 09-14-00399-CV, 2015 WL 5042145, at *4 (Tex. App.—Beaumont Aug. 27, 2015 pet. filed) (mem. op.); *Rivas v. Rivas*, No. 01-10-00585-CV, 2012 WL 151462, at *2 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.).

We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp.*, 971 S.W.2d at 407; *Hinkle*, 223 S.W.3d at 782.

### Whether the March 2010 Accident Caused Ford's Damages

Goggans argues the evidence was legally and factually insufficient to support the jury's finding that Ford's injuries resulted from the accident. Goggans argues the evidence was insufficient because there was no expert evidence linking Ford's injuries to the accident.

Expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). In this case, Ford's injuries were herniated and protruding discs in her neck and aggravation of a preexisting degenerative condition in her back. For purposes of this opinion, we will assume that both of these medical conditions are not within the common knowledge and experience of jurors. Therefore, Ford had to present expert testimony to establish that the accident caused her injuries.

Ford's chiropractor testified Ford was experiencing pain and that the car wreck was the cause of her pain and limitations. He also stated that in a car wreck, the facets in the spine become "inflamed from moving too much. And then, when they get inflamed, it just causes a big bunch of inflammation that will come in, and it just causes more pain." He also testified that Ford had radiculopathy in her neck that "[m]ore likely than not" was caused by "[t]he car crash." He also testified that in his expert opinion, the treatment he provided Ford was needed solely because of the injuries she sustained in the accident.

Ford's neurosurgeon testified he first saw Ford on September 22, 2011. He diagnosed her neck pains as resulting from herniated, bulging, and protruding discs and from spinal cord

–4–

compression causing impingement of nerves. He testified Ford required surgery to resolve these issues. He testified about the cause of her need for the surgery:

> Question: And based on reasonable medical probability, do you have an opinion about what the cause for the need for that surgery is? What caused her to need the surgery?
>
> Answer: [Ford's] complaint to me when I first met her was her neck and arm pain started after the accident and she didn't have it before. Having herniated discs in the neck are consistent with that type of an injury. And so I believe the cause of her symptoms and her clinical condition was the car accident.
>
> Question: So in reasonable medical probability is the March 12, 2010, car wreck a substantial factor or a cause for the surgery that you recommend in her neck?
>
> Answer: Yes.
>
> Question: Okay. And more likely than not, do you think that the car wreck was the cause of the disc bulges that you see on the MRIs?
>
> Answer: The best—so, yes, because it's completely probable that it was. The way I like to explain it to my patients is if I had an MRI immediately before the accident, the day before and the day after, I can tell you for certain. But high velocity car accidents or car accidents in general can cause disc herniations or bulges. They can certainly aggravate a condition as well. . . . So when a patient has absolutely no pain or issues before and then happens to feel afterwards, I have no reason to question otherwise. It's very probable and likely."

The neurosurgeon testified that Ford's pain in her lower back and right leg resulted from "facet arthropathy, bone spurring, thickened ligament or synovium joint line from a—basically a diseased joint that's impinging upon the foramen." He testified this was a degenerative condition that "very well could have been present before the accident." He stated this condition can be dormant until a traumatic event accelerates it, making it "a very prevalent unremitting issue that leads you to need surgery in the worst cases." He also testified he believed this condition was aggravated by the wreck because:

> she didn't have pain before . . . and she said it started after the accident. Consistent in the right leg, and it's been consistent since the accident. And it's common. When you have a car accident, that can bring about symptoms from aggravation that weren't present before. That's actually quite common. . . . Probably more common that actually rupturing a disc during an accident to be honest.

Based on reasonable, medical probability, he believed Ford had some degeneration in her lower back that was aggravated by the accident. He testified that surgery could alleviate Ford's condition.

"[T]emporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation." *Guevara*, 247 S.W.3d at 667. "Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Id.* at 668. In this case, there is more than mere temporal proximity between the accident and Ford's pain. The doctors diagnosed the conditions causing her pain, the ruptured and displaced discs in her neck and the aggravated degenerative condition in her lower spine, and they testified that these were the common results of automobile accidents such as the one in this case. We conclude this evidence is legally and factually sufficient to link Ford's damages to the accident with Goggans.

**Evidence of Other Accidents**

Goggans also asserts there is insufficient evidence he caused Ford's damages because Ford did not tell her doctors about two automobile accidents in which she was involved in October and December 2010. Ford's husband testified Ford told him about these two accidents. In October 2010, Ford was in a pickup truck and backing out of a parking place when she bumped a car behind the pickup. In December 2010, Ford was at a traffic light behind another car. The car in front of her started moving forward and then stopped, and Ford ran into the back of the car. Ford did not tell her doctors about either incident. Ford testified she did not tell the doctors about them because they were "little fender benders" and she was not hurt any more after

the accidents than she was before them. She testified that if she had been hurt by these accidents, she would have told her doctors so they could treat her because she does not like to be in pain.

"Establishing causation in a personal injury case requires a plaintiff to 'prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). "[I]f evidence presents 'other plausible causes of the injury or condition that could be negated, the [proponent of the testimony] must offer evidence excluding those causes with reasonable certainty.'" *Id.* (quoting *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997))).

In this case, the jury could conclude from the testimony that the October and December 2010 accidents involved minimal force and were not plausible causes of Ford's condition. Similarly, the jury could conclude that Ford and her husband's testimony about these incidents explained with reasonable certainty that these incidents did not contribute to Ford's condition. We conclude that the October and December 2010 accidents did not affect the legal and factual sufficiency of the evidence that Goggans caused Ford's injuries.

### Whether Goggans Should Be Liable for the Accident

Goggans also asserts the evidence was legally and factually insufficient for the jury to find his negligence caused the March 2010 accident. Goggans asserts he established as a matter of law that he was acting in a sudden emergency.

Goggans testified he was driving on the freeway when a car pulled into his lane from the left. Goggans stated he braked hard and swerved to the right to avoid hitting the vehicle moving over from the left and because a truck behind him was not reacting to his braking, and in doing so he struck the Fords' car. Goggans argues that because there was no evidence he was not

acting in a sudden emergency, the trial court should have granted his motion for judgment notwithstanding the verdict. We disagree.

"A jury is entitled to blend evidence admitted before it and may believe all, some or none of a witness' testimony." *Bufkin v. Bufkin*, 259 S.W.3d 343, 355 (Tex. App.—Dallas 2008, pet. denied). The jury was not required to believe Goggans's testimony that he could not have avoided the accident. Likewise, the jury did not have to believe his testimony that a car moved over from the left creating an emergency situation, that he braked hard to avoid a collision, or that a truck was approaching him from behind. Instead, the jury could have believed that he failed to keep a proper lookout and struck the Fords' car.

We conclude the evidence is legally and factually sufficient to support the jury's finding that Goggans's negligence caused the accident.

## Factual Sufficiency of the Damages Awarded

Goggans also asserts the evidence is factually insufficient to support the jury's award of damages. The jury awarded Ford $77,500 for past medical expenses, $100,000 for future medical expenses, $50,000 for past physical pain and mental anguish, $25,000 for future physical pain and mental anguish, $25,000 for past physical impairment, and $15,000 for future physical impairment.

### *Economic Damages*

Concerning Ford's past medical expenses, Ford was entitled to recover medical expenses "actually paid and incurred." TEX. CIV. PRAC. & REM. CODE ANN. § 41.0105 (West 2015). "'[A]ctually paid and incurred' means expenses that have been or will be paid, and excludes the difference between such amount and charges the service provider bills but has no right to be paid." *Haygood v. De Escabedo*, 356 S.W.3d 390, 396–97 (Tex. 2012). Ford presented evidence that the medical expenses she paid and incurred resulting from the accident totaled

$155,263.42. The jury awarded Ford approximately one-half that amount. We conclude the evidence is factually sufficient to support the award of this amount.

Concerning Ford's future medical expenses, her neurosurgeon testified she requires cervical and lumbar surgeries to repair the damage from the accident and alleviate her pain. Ford presented evidence that the total cost for her cervical surgery will be $90,585.70, and the total cost for the lumbar surgery will be $106,217.22. The total for both surgeries is $196,802.92. The jury awarded $100,000 for future medical expenses. We conclude the evidence is factually sufficient to support the award of this amount.

*Non-Economic Damages*

The jury has great discretion in awarding damages it deems appropriate for pain and suffering. *Moreno v. Ingram*, 454 S.W.3d 186, 195 (Tex. App.—Dallas 2014, no pet.). "The process of awarding damages for amorphous, discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.).

The jury awarded Ford $50,000 for past physical pain and mental anguish and $25,000 for future physical pain and mental anguish. Ford testified to the nearly constant pain she had suffered from March 12, 2010, through the trial in June 2014. Ford's doctors, her husband, and her sister also testified about her pain. Ford and the neurosurgeon also testified about the surgeries she would have to undergo to alleviate the pain. We conclude the evidence is factually sufficient to support the jury's award of past and future pain and mental anguish.

The jury awarded Ford $25,000 for physical impairment sustained in the past and $15,000 for physical impairment in the future. "Physical impairment" was not defined for the jury. The supreme court has stated that physical impairment may be considered, among other things, "loss of enjoyment of life." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772

(Tex. 2003). "[T]he effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and . . . a claimant should not be compensated more than once for the same elements of loss or injury." *Id.* Ford, her husband, and her sister testified about Ford's active lifestyle and her involvement with her family before the accident and how the pain she has suffered after the accident leaves her unable to engage in the activities she enjoyed before and how it has reduced her ability to interact with her children and the rest of her family. We conclude the evidence is factually sufficient to support the jury's awards for physical impairment.

We conclude the evidence is legally and factually sufficient to support the jury's verdict.

## EXCLUSION OF EVIDENCE

Goggans asserts the trial court erred by excluding evidence of the photographs of the vehicles showing the damage to the vehicles from the accident. The excluded photographs are not included in the appellate record. To preserve error for appellate review with regard to the exclusion of evidence, the substance of the evidence must be made known to the court by an offer of proof, or otherwise be apparent from the context of the questioning. TEX. R. EVID. 103(a)(2). Goggans offered the photographs because Ford testified that the October and December 2010 accidents in which she was not injured were "fender benders," and he wanted the jury to be able to compare the damage to the vehicles in the March 2010 accident to Ford's description of the later accidents. However, Goggans made no offer of proof, and he never made known the extent of the damage to the vehicles portrayed by the excluded photographs. Accordingly, we conclude Goggans did not preserve any error from the exclusion of the photographs.

Even if error were preserved, Goggans has not shown the trial court abused its discretion by excluding the photographs. We review a trial court's exclusion of evidence for an abuse of

–10–

discretion.  *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015).  A trial court abuses its discretion when it acts without reference to any guiding rules or principles.  *Owens-Corning Fibergals Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).  An appellate court must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling.  *Id.*

Evidence has relevance if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  TEX. R. EVID. 401.  The trial court has discretion to exclude relevant evidence when the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  TEX. R. EVID. 403.

Goggans argues on appeal, "In light of Ford's testimony describing those accidents as 'fender benders,' the jury should have been allowed to see the photos of the property damage in this case to determine how it compared to the alleged subsequent 'fender benders' that . . . Ford testified did not cause her injuries."  Even if the excluded photographs of the March 2010 accident had been admitted, there were no photographs or detailed descriptions of the damage caused by the October and December 2010 accidents.  Therefore, the jury could not have compared the property damage of the March 2010 accident to the later accidents.  Also, the circumstances of the accidents, including the speed of the vehicles, the angle of the collisions, and Ford's position in the vehicle (she was a passenger in the March 2010 accident and the driver in October and December 2010 accidents) were so different that any comparison of the damage to the vehicles from the accidents would not tend to make it more or less likely that Ford was injured in the March 2010 accident and was not injured in the October and December 2010 accidents.  The trial court could also have determined that the minimal probative value the photographs may have had was substantially outweighed by the danger of confusion of the issues or misleading the jury.

We conclude Goggans has not shown the trial court abused its discretion by excluding the photographs.

## JURY CHARGE

Goggans also contends the trial court erred by not submitting instructions in the jury charge on the doctrines of sudden emergency and unavoidable accident. A trial court is required to give "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009). We review claims of charge error for an abuse of discretion. *Id.* at 856.

Sudden emergency and unavoidable accident are inferential rebuttal defenses. *Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 432 (Tex. 2005). They inform the jurors that they do not have to place blame on a party if the evidence shows that conditions beyond the party's control or the conduct of a nonparty caused the injury in question. *Id.*

The trial court instructed the jury on sudden emergency in the manner requested by Goggans, and the court refused to instruct the jury on the doctrine of unavoidable accident. The trial court instructed the jury on sudden emergency as follows:

> If a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

Goggans requested the jury be instructed on "unavoidable accident" as follows: "An occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to the occurrence." The doctrine of sudden emergency is subsumed by the broader doctrine of unavoidable accident. *Reinhart v. Young*, 906 S.W.2d 471, 474 (Tex. 1995) (quoting

–12–

KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 29 at 162 n.1 (5th ed. 1984)). In this situation the trial court would have been required to submit an unavoidable accident instruction only if the evidence showed the existence of an unavoidable accident that was not a sudden emergency. *See Columbia Rio Grande*, 284 S.W.3d at 855 (jury instruction must be supported by pleading and evidence); *Dillard*, 157 S.W.3d at 433 (not error to reject inferential rebuttal instructions when the submitted instructions included all shades of party's inferential rebuttal theories).

Goggans's theory of the case was that a car moved into his lane without warning, requiring Goggans to brake hard, and that a truck behind him did not respond to his braking, requiring Goggans to swerve to the right. These facts fit the definition of sudden emergency. Goggans does not explain how the evidence could constitute an unavoidable accident while not constituting a sudden emergency.

We conclude Goggans has not shown the trial court abused its discretion by refusing to instruct the jury on the doctrine of unavoidable accident.

## CONCLUSION

We conclude Goggans has not demonstrated the trial court erred by denying his motion for judgment notwithstanding the verdict and motion for new trial. We overrule Goggans's issue on appeal.

We affirm the trial court's judgment.

141239F.P05

/Lana Myers/
LANA MYERS
JUSTICE

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MATTHEW GOGGANS, Appellant

No. 05-14-01239-CV        V.

TONIA MARIE FORD, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-02281-B.
Opinion delivered by Justice Myers. Justices
Bridges and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee TONIA MARIE FORD recover her costs of this appeal
from appellant MATTHEW GOGGANS.

Judgment entered this 9th day of December, 2015.