

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00617-CV

**IN RE** Arturo **PEREZ** and Texas Materials Group, Inc.

Original Mandamus Proceeding[1]

Opinion by: Lori I. Valenzuela, Justice

Sitting:      Irene Rios, Justice
             Lori I. Valenzuela, Justice
             Lori Massey Brissette, Justice

Delivered and Filed: June 24, 2026

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relators Arturo Perez ("Perez") and Texas Materials Group, Inc. ("TMG") seek mandamus relief from the trial court's July 2, 2025 order granting real party in interest Brandon C. Rios's ("Rios") motion for new trial. The order set aside a unanimous twelve-member take-nothing verdict for Relators following a two-week jury trial. It articulates two grounds for granting a new trial: factual sufficiency and what the order labels as "empty chair" or section 33.004[2] gamesmanship in presenting evidence concerning an undesignated nonparty traffic control officer. Our review is confined to whether the grounds set forth in the new trial order are legally

---

[1] This proceeding arises out of Cause No. 2022-CI-19897, styled *Brandon C. Rios v. Arturo Perez and Texas Materials Group, Inc. (D/B/A Texas Materials)*, pending in the 285th Judicial District Court, Bexar County, Texas, the Honorable Nadine Melissa Nieto presiding.

[2] Section 33.004 of the Texas Civil Practice and Remedies Code describes procedures through which "[a] defendant may seek to designate a person as a responsible third party[.]" TEX. CIV. PRAC. & REM. CODE § 33.004.

appropriate and supported by the record. *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 758 (Tex. 2013) (orig. proceeding) ("If, despite conformity with the procedural requirements of our precedent, a trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand.").

Relators filed their petition for writ of mandamus on September 26, 2025. The parties jointly requested a stay of this original proceeding so that they could supplement the mandamus record with the complete record of the trial and afford the real party in interest time to file their response with the full trial record available. The mandamus record is now complete, the real party in interest has filed his response, and the relators have filed a reply. Having considered the new trial order, the arguments of the parties, and the record presented, we conclude that the trial court abused its discretion in granting the new trial order and that relators do not possess an adequate remedy at law. Accordingly, we conditionally grant the petition.

## I. BACKGROUND

### A. The Collision and Trial

The underlying suit arises from a May 2021 vehicle collision in a construction zone. Two off-duty police officers were directing traffic at the work-zone exit. One was positioned at an intersection controlling the flow of through traffic; the other served as a flagger, signaling vehicles exiting the construction site onto the roadway. Rios was a passenger in a vehicle driven by Domingo Zapata. Perez was operating a dump truck within the scope of his employment with TMG. As Perez's dump truck exited the construction zone and merged onto the roadway, it struck Zapata's vehicle.

The crash report taken that day indicated that Perez "stated he thought the flagman was waving him through the intersection." The crash report also indicated that Zapata "stated that he was flagged through the intersection…by the flagman at the intersection." The disputed testimony

at trial centered on whether Perez had reasonably interpreted the flagger's hand signals when proceeding into the intersection.

Rios filed suit against Perez and TMG on October 6, 2022. Relators did not designate the traffic control officer as a responsible third party. Trial was set for January 23, 2025.

On January 10, 2025, relators filed a stipulation conceding that Perez was within the course and scope of his employment, that the accident occurred as Perez was exiting the construction zone, that Rios's vehicle had the right of way, and that TMG was vicariously responsible for any negligence of Perez. The stipulation does not concede negligence, proximate cause, or causation of any specific injury. It was incorporated into the jury charge.

Trial began on January 23, 2025 and concluded on February 3, 2025. A twelve-member jury heard the case over this two-week period.

Rios introduced evidence and argument concerning the traffic control officer throughout trial: in his opening statement; through the testimony of Officer Shane Huebner (his first witness, presented by video deposition); through Perez's testimony in Rios's case-in-chief; through Zachary Marshall's testimony in Rios's case-in-chief; through the TMG incident report (Plaintiff's Exhibit 54); and through the Crash Report (Plaintiff's Exhibit 1). Relators also referenced the traffic control officer at various points, including in their opening statement, in cross-examination of Marshall, in the video deposition of Zapata, and in their closing argument.

Rios did not object on the basis of responsible third party or related substantive admissibility grounds at any point during trial. At the pre-charge-conference colloquy, Rios's counsel raised "that issue with kind of a responsible third party" and asked whether the trial court could instruct the jury on the flagger; defense counsel responded that the charge addressed the matter, and the trial court agreed. Rios's counsel then stated "No objections from Plaintiff" and lodged no objection as the charge conference proceeded page by page.

Rios filed a motion in limine on January 25, 2025, seeking to exclude sixty-six categories of information. Relevant to the new trial order are Rios's motions in limine number 23 and 49, both of which were agreed upon by the parties. The first regarded the introduction of evidence that was not produced or disclosed by the parties. The second precluded the introduction of the probable testimony of a witness not testifying.

On February 3, 2025, the jury returned a unanimous take-nothing verdict, answering "No" to Question 1, which asked whether the negligence, if any, of Perez proximately caused the injury in question. The trial court signed a take-nothing final judgment on March 24, 2025.

Rios filed a motion for new trial on March 4, 2025, which preceded the signed judgment, and refiled the motion on April 21, 2025. The trial court conducted hearings on May 22, 2025 and June 30, 2025. On July 2, 2025, the trial court signed the order granting the motion that is the subject of this original proceeding.

## B. The New Trial Order

The new trial order articulates two grounds. The first ground is factual sufficiency. The order states that "the jury's determination that the negligence of Arturo Perez, did not proximately cause the injury in question was error that cannot be reconciled or disregarded because this answer completely ignores undisputed facts, and is contrary to the great weight and preponderance of the totality of the evidence." The order adds that the evidence was "overwhelming" and "undisputed" in the form of "stipulations of the parties concerning 'right of way.'" Apart from the stipulation, the order does not identify any specific testimony or other evidence in the record to support its description of the evidence as overwhelming or undisputed.

The second ground is what the order labels as defendants' "purposeful gamesmanship" in presenting an "empty chair" defense by blaming an undesignated traffic flagger. The order finds that defense counsel, "Repeatedly throughout trial . . . referred to and blamed an unnamed,

unidentified and undesignated responsible third party (sic) traffic officer," and that defendants introduced "evidence not produced in discovery . . . in violation of Plaintiff's Motion in Limine #23 and #49 and over objections by Rios." The section of the reporter's record that the order cites in support of this assertion relates to completely different testimony. A careful review of the reporter's record does not indicate that any such evidence of this finding exists. The order also finds that defendants "intentionally subverted or ignored the RTP designation requirements," "engaged in dilatory tactics intentionally to game the system and provided inadequate disclosure responses," and that defendants' disclosure responses "every time" stated that "Defendants are not currently aware of any potential responsible third parties."

## II. MANDAMUS STANDARD

To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy at law, such as by an appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "A trial court's 'error of law' or 'erroneous application of law to facts,' … 'is always an abuse of discretion.'" *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 835 (Tex. 2024) (quoting *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig. proceeding). Whether the relator possesses an adequate remedy at law requires balancing public and private interests in allowing mandamus to proceed or reserving ruling until there is a final appeal. *In re Prudential*, 148 S.W.3d at 136–37. "The operative word, 'adequate', has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential*, 148 S.W.3d at 136.

## III. ANALYSIS

Disregarding a jury's verdict "is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury." *In re Space Expl. Techs. Corp.*, 716 S.W.3d 576, 581-82 (Tex. 2025) (per curiam) (orig. proceeding) (quoting *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 302 (Tex. 2023) (orig. proceeding)). Accordingly, trial courts must articulate "understandable, reasonably specific, and legally appropriate" reasons when granting a motion for new trial. *Toyota*, 407 S.W.3d at 759. However, "[s]imply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct." *Id.* at 759. "The [new trial] order must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings." *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012).

The trial court's articulated reasons must be supported by the underlying record; if they are not, the order cannot stand. *Id.* at 758. Thus, our review extends to the underlying merits of the articulated reasons, including whether the reason is a mistake of law or unsupported by the record. *Rudolph*, 674 S.W.3d at 301–02.

Here, the new trial order asserts two primary grounds for disregarding the unanimous jury verdict in defendants' favor: (1) that the jury verdict "completely ignores undisputed facts" and is contrary to the "great weight and preponderance of the totality of the evidence," which the court repeatedly describes as "overwhelmingly" establishing that Perez was negligent and that his negligence was the proximate cause of Rios's injuries; and (2) that defendants improperly sought to attribute responsibility to an undisclosed, unnamed, and undesignated traffic flagger.

### A. Factual Sufficiency

Ground 1 of the order's rationale for granting a new trial relies on the right-of-way stipulation as the foundation for its description of the evidence of Perez's negligence and

proximate cause as "overwhelming" and "undisputed." The articulated factual predicate is not "valid and correct." *Toyota*, 407 S.W.3d at 759. It is contradicted by the record, and it rests on a legal premise that is wrong: a concession of right-of-way does not establish negligence as a matter of law. *See* III.A.1, infra. A new trial order whose articulated factual basis is refuted by the record, and whose stated reason is legally invalid, is a clear abuse of discretion. *Id.* at 757–59; *Rudolph*, 674 S.W.3d at 301–02; *United Scaffolding*, 377 S.W.3d at 689. We do not reweigh the evidence; we hold only that the order's stated reason fails the merits-based review *Toyota* requires. Ground 1 fails for multiple reasons and serves as an independent basis for a conditional grant.

### 1. *The stipulation did not establish negligence as a matter of law*

"[T]he law recognizes . . . that some accidents occur without anyone's negligence". *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 833 (Tex. 2021) (quoting *Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 433 (Tex. 2005)). The existence of a right-of-way and a collision does not establish negligence per se. *See Venegas v. Argueta*, No. 01-20-00285-CV, 2021 WL 1679543, at *3 (Tex. App.—Houston [1st Dist.] Apr. 29, 2021, no pet.) ("A driver's failure to yield the right-of-way or the mere occurrence of a collision does not give rise to negligence as a matter of law."); *Middleton v. Palmer*, 601 S.W.2d 759, 765 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (whether the failure to yield at a right-of-way constitutes negligence is a fact issue for the jury); *see also Williams v. Mutia*, No. 01-19-00340-CV, 2021 WL 3729312, at *5–7 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021, no pet.) (failure to yield the right of way does not constitute negligence per se because the statutory duties imposed contemplate a reasonably prudent person standard); *Melvin v. Jimenez*, No. 04-00-00746-CV, 2002 WL 21963, at *1 (Tex. App.—San Antonio Jan. 9, 2002, no pet.) (motorist possessing the right of way is not released from the duty to exercise due care for their own safety or the safety of others).

The stipulation, included in the jury charge, concedes that Perez was "in the course and scope of his employment," that "he was exiting an active construction zone and merging onto the roadway," that "the vehicle in which Rios was a passenger had the right-of-way when the incident occurred, and that TMG "is responsible for any negligence of" Perez. It does not concede Perez's negligence, proximate cause, or causation of any specific injury. The term "negligence" is clearly used in a non-determinative, conditional manner; not as an admission. This stipulation alone is insufficient to establish that Perez was negligent or that any negligence of Perez caused the injuries that Rios complained of. The order's premise runs contrary to well established Texas law and is not a legally valid reason for a new trial.

### 2. The evidence on negligence and proximate cause was sharply disputed.

The order's characterization of the evidence as "overwhelming" and "undisputed" is contradicted by the record. The evidence at trial on negligence and proximate cause was sharply disputed, much of it through testimony Rios himself elicited.

The crash report, which was Rios' exhibit 1, indicated that both Perez and Zapata believed the flagman to be waving them through. Perez testified that he had his signal on, checked his mirror, saw no vehicles, then turned and saw the traffic officer "doing some hand signals" and "thought he was allowing me to pass," and that "I misinterpreted his hand signals, and I thought I could leave." Marshall, TMG's corporate representative whom Rios called in his case-in-chief, described the officer as "very far out in the intersection" and no longer "an active traffic control officer at that point," testified that the hand signals were "very confusing," characterized the collision as "an unfortunate accident," and concluded that, in TMG's assessment, "there wasn't a lot" Perez "could have done." Officer Huebner, Rios's first witness, described the two-officer protocol and the operational role assigned to the flaggers at the work-zone exit. Zapata, the driver

of the vehicle in which Rios was a passenger, testified that the flagger "was like waving us through."

The jury is "the sole judge of the credibility of witnesses and the weight to be given to their testimony," and its role is "to resolve inconsistencies within or conflicts among the witnesses' testimony." *In re Ellis*, No. 04-25-00052-CV, 2025 WL 1949741, at *5 (Tex. App.—San Antonio July 16, 2025, no pet.) (quoting *Givens v. Anderson Columbia Co.*, 608 S.W.3d 65, 70 (Tex. App.–San Antonio 2020, pet. denied)). The jury was free to credit Perez's account over the testimony of the investigating officer and the testimony Rios offered through his own witnesses. The Texas Supreme Court has recently reaffirmed: "Accidents happen when something has gone wrong, but not all accidents are evidence of negligence." *Lozada v. Posada*, 718 S.W.3d 262, 267 (Tex. 2025) (per curiam). And sufficiency is measured against the charge as submitted, not against the testimony of an investigating officer or an expert. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Ellis*, 2025 WL 1949741, at *6. A take-nothing verdict in a case of this character is within the jury's province. The order's substitution of its own evaluation of the evidence for that of the jury is the precise conduct *Rudolph* and our recent application in *Ellis* held insufficient to support a new trial. *Rudolph*, 674 S.W.3d at 307; *Ellis*, 2025 WL 1949741, at *7; *see also In re Spotted Lakes, LLC*, No. 04-23-00815-CV, 2024 WL 463348, at *4 (Tex. App.—San Antonio Feb. 7, 2024, orig. proceeding).

## B. Legally Appropriate

### 1. *A new trial order may not rest on grounds that were not preserved.*

A new trial order cannot rest on error that was not preserved. *Toyota*, 407 S.W.3d at 760–61; *Space Expl.*, 716 S.W.3d at 583–84. If evidence is admitted at trial without objection, any error is waived and is not a valid basis for a new trial. *Space Expl.*, 716 S.W.3d at 584 ("If evidence is thereafter admitted at trial without objection, any error is waived and is not a valid basis for a new

trial.") (citing *Toyota*, 407 S.W.3d at 760–61). A motion in limine, standing alone, generally does not preserve error. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex. 1986); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 619 (Tex. 1999). To preserve error from a violation of a sustained limine ruling, the complaining party must object contemporaneously, secure a ruling, and request a curative instruction or move for mistrial. *Pool*, 715 S.W.2d at 637; *Toyota*, 407 S.W.3d at 760–61. Rios did not object to the flagger evidence on responsible third party or related substantive admissibility grounds at any stage of the trial. The order cannot rest on a complaint that was not preserved.

### 2. *Rios introduced and developed the traffic-officer narrative*

Texas law forecloses a party from complaining of evidence the party itself introduced. *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 473 (Tex. 1998) ("A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character.") (quoting *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex. 1984)). The same-or-similar-evidence rule extends to invited error: "error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). Once evidence comes in without objection, it is "in for all purposes and a proper subject of closing argument." *Toyota*, 407 S.W.3d at 760.

The record establishes that Rios was the affirmative source of the traffic-officer narrative at every stage of trial.

*Opening statement.* Rios's counsel previewed the traffic-officer narrative in opening, telling the jury they would hear Perez's testimony that he "thought the flagman, the officer . . . was signaling me . . . to go through" and the body-camera audio of an officer saying "Stop. Stop."

Rios's counsel also posed the rhetorical question, "Why would a driver be so confused to disregard an off-duty traffic control officer?"

*Officer Huebner.* Rios then called Officer Huebner as his first witness, presented by video deposition. Before playback, the parties presented page-and-line objections to the trial court for ruling. The objections at that hearing were principally defense objections seeking to exclude portions of Huebner's testimony related to the flagger and to Huebner's fault opinions. Rios opposed exclusion. The trial court sustained two defense objections outright, partially sustained one, and overruled nine others. The flagger-related testimony, including Huebner's explanation of the two-officer protocol and his fault opinion, was elicited by Rios's counsel on direct.

*Perez.* Rios called Perez as an adverse witness in Rios's case-in-chief. Rios's counsel elicited from Perez that he "misunderstood [the flagger's] hand signals" and "thought that he was yielding for me to pass" testimony on direct. Rios did not make any objections during this testimony.

*Plaintiff's Exhibit 54.* Rios offered Plaintiff's Exhibit 54, the TMG incident report describing the flagger's role at the scene, twice. Both offers were made by Rios's counsel; the first was an agreed pre-admission, with the defense stating the exhibit was "agreed", and the second drew a "no objection" from the defense; both times the trial court admitted the exhibit without limitation on use. Plaintiff's Exhibit 1, the Crash Report, was also offered by Rios and contains the flagger-confusion narrative on its face.

*Marshall.* Rios called Marshall, TMG's corporate representative, as an adverse witness in Rios's case-in-chief. Rios's counsel elicited the testimony that Perez was "thoroughly confused about what the traffic control officer was signaling," that the officer was "very far out in the intersection" and was no longer "an active traffic control officer at that point," that the signals were "very confusing," that the collision was "an unfortunate accident," and that, in TMG's

assessment, "there wasn't a lot" Perez "could have done." The only objections Rios lodged during Marshall's cross-examination were form objections: speculation, leading, and counsel testifying. They were directed at the form of the defense's questioning, not at the substance or admissibility of the traffic-officer evidence. The order's finding that the evidence came in "over objections by Rios" is therefore unsupported: Rios made no substantive admissibility objection at any stage of trial.

*Plaintiff's initial closing.* Rios's counsel referenced the traffic officer in plaintiff's initial closing, arguing that Perez had told inconsistent stories about the cause of the accident.

Across opening, three plaintiff-called witnesses, two plaintiff-offered exhibits, and plaintiff's initial closing, Rios was the affirmative source of the traffic-officer narrative. Rios cannot now obtain a new trial on the basis of evidence he himself introduced and developed. The order's premise that defendants injected an undesignated-RTP narrative over Rios's resistance is contradicted by the record. The invited-error doctrine forecloses Rios from complaining of the evidence that he introduced. *Sw. Elec. Power Co.*, 966 S.W.2d at 473.

### 3. The right-of-way stipulation did not establish negligence as a matter of law.

As discussed supra, the right-of-way stipulation did not establish that Perez was negligent as a matter of law. The new trial order characterizes the evidence contradicting the jury's unanimous verdict as overwhelming, undisputed, and stipulated. The only evidence that the order points to is the January 10, 2025, stipulation regarding the right-of-way. The stipulation did not concede liability and did not constitute negligence per se. The trial court's misapplication of Texas law to construe the right-of-way stipulation as per se negligence was an abuse of discretion.

### C. No Adequate Remedy by Appeal

A 12-person jury considered the testimony and evidence of the parties over the course of a two-week trial. Upon the conclusion of that trial, they rendered a unanimous verdict in favor of

the defendants. This court and the Texas Supreme Court have recognized that there may not be an adequate remedy by appeal when a district court issues an erroneous new-trial order. *Rudolph*, 674 S.W.3d at 298 n.5; *see also In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209–10 (Tex. 2009) (orig. proceeding); *Ellis*, 2025 WL 1949741, at *7. Direct appeal from a final judgment in a second trial would not remedy the harm of having the unanimous take-nothing verdict set aside on impermissible grounds. Relators have satisfied the second prong of the mandamus test.

## IV. CONCLUSION

The trial court abused its discretion when it granted Brandon C. Rios's motion for new trial on July 2, 2025. We conditionally grant the petition for writ of mandamus. The trial court is directed to vacate the July 2, 2025 order granting a new trial and sign a final judgment based on the jury's unanimous verdict. We are confident the court will comply, and the writ will issue only if we are advised that it has not within fifteen (15) days of this order.

Lori I. Valenzuela, Justice